IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 2:18-cv-00210 |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| TRIDENT SEAFOODS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Table of Contents

I.      JURISDICTION AND VENUE ................................................................ 1

II.      APPLICABILITY ................................................................................... 2

III.      DEFINITIONS ...................................................................................... 3

IV.      CIVIL PENALTY .................................................................................. 5

V.      COMPLIANCE REQUIREMENTS ....................................................... 6

VI.      INJUNCTIVE RELIEF AT SAND POINT FACILITY ......................... 6

VII.      INJUNCTIVE RELIEF AT WRANGELL FACILITY ........................... 13

VIII.      INDEPENDENT AUDIT OF ENVIRONMENTAL MANAGEMENT SYSTEM ......... 15

IX.      APPROVAL OF DELIVERABLES ....................................................... 16

X.      REPORTING REQUIREMENTS ......................................................... 17

XI.      STIPULATED PENALTIES ................................................................. 19

XII.      FORCE MAJEURE .............................................................................. 23

XIII.      DISPUTE RESOLUTION .................................................................... 25

XIV.      INFORMATION COLLECTION AND RETENTION ........................... 28

XV.      EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................. 30

XVI.      COSTS .................................................................................................. 31

XVII.      NOTICES ............................................................................................. 32

XVIII.      EFFECTIVE DATE .............................................................................. 33

XIX.      RETENTION OF JURISDICTION ....................................................... 34

XX.      MODIFICATION ................................................................................. 34

XXI.      TERMINATION .................................................................................. 34

XXII.      PUBLIC PARTICIPATION ................................................................. 35

XXIII. SIGNATORIES/SERVICE.............................................................................................. 36

XXIV. INTEGRATION ....................................................................................................... 36

XXV.  FINAL JUDGMENT ................................................................................................. 37

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, alleging that Defendant Trident Seafoods Corporation violated Sections 301 and 402 of the Clean Water Act ("Act"), 33 U.S.C. §§ 1311 and 1342.

The Complaint against Defendant alleges that Defendant violated the conditions and limitations of its National Pollutant Discharge Elimination System ("NPDES") permits, issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, including limits on the "zones of deposit" (seafood waste piles), annual and daily discharge volume limits, grind size requirements for seafood waste, requirements for proper handling and treating of seafood waste prior to discharge, and monitoring and reporting requirements, for its seafood processing facilities in Sand Point, Alaska and Wrangell, Alaska.

The Parties recognize, and the Court by entering the Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that the Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.       JURISDICTION AND VENUE

1.       This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties. Venue lies in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), because the Defendant is located and is doing business in this judicial district. For purposes of the Decree, or any action to enforce the Decree, Defendant consents to the Court's

jurisdiction over the Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of the Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b).

## II.      APPLICABILITY

3.      The obligations of the Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, Defendant shall provide a copy of the Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA, the United States Attorney for the Western District of Washington, and the United States Department of Justice, in accordance with Section XVII (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of the Decree.

5.      Defendant shall provide a copy of the Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of the Decree, as well as to any contractor retained to perform work required under the Consent Decree.

Defendant shall condition any such contract upon performance of the work in conformity with the terms of the Consent Decree.

6.    In any action to enforce the Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of the Consent Decree.

### III.    DEFINITIONS

7.    Terms used in the Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in the Decree.  Whenever the terms set forth below are used in the Consent Decree, the following definitions shall apply:

a.    "Complaint" shall mean the complaint filed by the United States in this action;

b.    "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto;

c.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under the Consent Decree, where the last Day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d.    "Defendant" shall mean Trident Seafoods Corporation;

e.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

3

f.  "Effective Date" shall have the definition provided in Section XVIII;

g.  "Paragraph" shall mean a portion of the Decree identified by an Arabic numeral;

h.  "Parties" shall mean the United States and Defendant;

i.  "Sand Point Facility" shall mean Defendant's seafood processing facility located in Sand Point, Alaska;

j.  "Sand Point Permit" shall mean the individual NPDES Permit No. AK0052787 issued by EPA to Defendant for the Sand Point Facility pursuant to Section 402 of the Act, 33 U.S.C. § 1342;

k.  "Section" shall mean a portion of the Decree identified by a Roman numeral;

l.  "State" shall mean the State of Alaska;

m.  "United States" shall mean the United States of America, acting on behalf of EPA;

n.  "Wrangell Facility" shall mean Defendant's seafood processing facility located in Wrangell, Alaska; and

o.  "Wrangell Permit" shall mean the Seafood General Permit and discharge authorization with the unique identifier AK-G52-0058 issued to Defendant for the Wrangell Facility pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

p.  "Zone of Deposit" shall have the same meaning accorded to it by Sections I.C.2, and IX of the Sand Point Permit and Sections V.C.1.l and X of the Wrangell Permit.

4

IV.   CIVIL PENALTY

8.      Within 30 Days after the Effective Date, Defendant shall pay the sum of $297,000

as a civil penalty, together with interest accruing from November 2, 2017, at the rate specified in

28 U.S.C. § 1961 as of the date of lodging.

9.      Defendant shall pay the civil penalty due via FedWire Electronic Funds Transfer

("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to

Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for

the Western District of Washington after the Effective Date.  The payment instructions provided

by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which

Defendant shall use to identify all payments required to be made in accordance with the Consent

Decree.  The FLU will provide the payment instructions to:

> Shawn Stokes
> 5303 Shilshole Ave NW, Seattle WA, 98107
> sstokes@tridentseafoods.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions

on its behalf by providing written notice of such change to the United States and EPA in

accordance with Section XVII (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to

EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance

Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via

email or regular mail in accordance with Section XVII; and (iii) to EPA in accordance with

Section XVII.  Such notice shall state that the payment is for the civil penalty owed pursuant to

the Consent Decree in *United States v. Trident Seafoods Corporation* and shall reference the

5

civil action number, CDCS Number and DOJ case number 90-5-1-1-11200.

10.     Defendant shall not deduct any penalties paid under the Decree pursuant to this Section or Section XI (Stipulated Penalties) in calculating its federal income tax.

## V.     COMPLIANCE REQUIREMENTS

11.     Defendant shall comply with applicable requirements of the Act, regulations promulgated pursuant to the Act, Sand Point Permit, and Wrangell Permit with respect to the Sand Point Facility and Wrangell Facility.

## VI.     INJUNCTIVE RELIEF AT SAND POINT FACILITY
### Pile Removal and Source Reduction

12.     No later than December 31, 2019, Defendant shall remove those portions of the seafood waste pile as described below.

13.     At least 90 Days before commencing field work, Defendant shall submit a proposed Waste Remediation Work Plan for the removal project, including monitoring components, to EPA for approval.  The proposed plan shall include both a Field Sampling Plan ("FSP") and Quality Assurance Project Plan ("QAPP") component.  The goals, objectives, and a description of the planned field work shall also be included in the Sand Point Facility's Best Management Practices ("BMP") Plan and the FSP and QAPP shall be included as appendices in the BMP Plan.  The removal project shall be consistent with the work plan approved by EPA in accordance with Section IX of the Consent Decree.

14.     Upon EPA's approval of the Waste Remediation Work Plan, Trident shall remove the seafood waste pile within the "Revised 2017 Seafood Waste Presence Boundary based on 2016 data (3.47 acres)" depicted on the map attached hereto as Appendix A.

15.     The seafood waste pile removal and monitoring activities, and the draft Removal Report shall include, at a minimum, the following elements, which shall be set forth in the draft Waste Remediation Work Plan:

a.  Bottom Surveys

(1)     Defendant shall conduct a pre-removal visual survey (e.g., dive survey, drop camera/video survey) to confirm the removal area perimeter, with buoys to be placed for surface reference as needed.

(2)     Defendant shall conduct at least two visual surveys during the removal operation to monitor the effectiveness of the pile removal and to minimize removal of native sediment.  Conditions permitting, visual surveys shall be conducted at the 25% and 50% completion stages of the removal operation.

(3)     Defendant shall conduct a post-removal visual survey to record the degree of pile removal and the condition of the seabed in the removal areas.

(4)     Defendant shall report the results of these required visual surveys in accordance with Paragraph d below.

b.  Dewatering and Removal

(1)     Dredging shall be completed with an enclosed bucket to prevent

7

loss of dredged material over the top of the bucket.

      (2)     If flat-deck barges are used for transport of dredged material, they shall have containment walls to prevent loss of dredged material.  Barges will not be filled to a point where the freeboard along the edges of the barge is less than one foot.

      (3)     Defendant shall implement controls as necessary to drain dredge water from barges and ensure that water quality standards are not violated.  Control methods can include but are not limited to placement of filter media (such as straw bales, filter fabric) at the scuppers of binned flat deck barges.

      (4)     Defendant shall monitor turbidity prior to and during removal operations throughout the water column and near-the seafloor, in accordance with the EPA-approved Waste Remediation Work Plan.  Defendant shall additionally observe and record all turbid plumes proximate to removal operations.  All monitoring results and observations shall be recorded in a log and compiled for inclusion in the Removal Report.

      (5)     Defendant shall observe the materials coming from the dredge buckets and exercise best efforts to minimize removal of native sediment.

c.  Disposal and Monitoring

      (1)     The seafood waste pile debris shall be dewatered in accordance with Paragraph 15.b (3) above, and disposed of at an at-sea disposal site in accordance with Section I.B of Defendant's Sand Point Permit.  The discharge area must be at least one nautical mile from shore and more than 120 feet in depth at mean

8

lower low water.

(2)     Defendant shall maintain a written log of its discharges, noting the time, date, amount, nature, and location (latitude and longitude in degrees, minutes, and seconds as determined by GPS) of these discharges.  Defendant shall record vessel speed, dump site start, stop and intermediate positions for each load dumped.

(3)     Any vessel used for disposal must be traveling at a minimum of 3 knots while dumping, to the extent such speed can be safely maintained based on conditions at sea.  In the event that a speed of 3 knots cannot be safely maintained, Trident shall maintain the maximum safe speed and the reasons for not maintaining a minimum speed of 3 knots shall be recorded along with the information required in Paragraph 15.c (2) above.

(4)     Sea life or activity shall be monitored and recorded at the time of dumping, in accordance with Section I.B.2.c of the Sand Point Permit.

(5)     Weather conditions shall be recorded at the time of dumping.

(6)     Visual surface observations shall be recorded at the time of dumping.

(7)     All of the above shall be logged for compilation in the Removal Report.

d.  Defendant shall submit a draft Removal Report to EPA for review within 120 Days of completing field work required in Paragraphs 12 through 16. The Removal

Report shall include the results of the above surveys, monitoring, and the degree of pile removal.

e. In addition to pile removal, Defendant shall install and operate additional source reduction techniques and/or implement other measures to reduce the amount of seafood processing waste and seafood processing waste residues discharged into Popof Strait to the extent necessary to ensure consistent compliance with the 1.0-acre ZOD limit contained in the Sand Point Permit.

16. Defendant shall obtain all necessary permits and/or approvals from federal, state, and local agencies for the removal project, as applicable, and use good-faith efforts to secure necessary authorization in a timely manner.

## Visual Surveys

17. Starting the first calendar year following completion of field work for the seafood waste pile removal required in Paragraph 12 above, and continuing for as long as the Consent Decree remains in effect under Section XXI (Termination), Defendant shall conduct annual visual surveys (e.g., dive survey, drop camera/video survey) to monitor compliance with the Sand Point Permit's 1.0-acre ZOD limit.

18. Defendant shall, within 120 Days of a written request by EPA, conduct additional visual surveys if the Sand Point Facility is not in compliance with the Sand Point Permit's 1.0-acre ZOD limit.

19. At least 90 Days before planned commencement of the initial annual visual survey required by Paragraph 17 above, Defendant shall submit to EPA for approval a draft Visual Survey Work Plan describing the methodology for conducting the annual visual surveys.

20. Each annual visual survey shall be conducted in a manner consistent with the work plan approved by EPA in accordance with Section IX of the Consent Decree.

21. At a minimum, each annual visual survey shall have a scope that extends beyond the boundary of the ZOD and shall include diver observations or drop camera/video survey at survey points at and outside the visible edge of the ZOD, in accordance with the Visual Survey Work Plan. Every second year, the visual survey shall also be accompanied by core samples at the same survey points. The visual surveys and core sampling and subsequent report shall include stations containing continuous, discontinuous, and trace amounts of visible seafood waste, as defined in the Visual Survey Work Plan.

22. If outfall relocation is proposed by the Defendant and authorized by the Alaska Department of Environmental Conservation and EPA, subsequent visual survey and compliance calculations must include seafood waste at both historic and new outfall locations in accordance with the approved Visual Survey Work Plan.

23. Defendant shall submit a draft visual survey report to EPA for review within 60 Days after completing field work.

<u>Additional Compliance Measures and Planning</u>

24. Defendant shall, within 120 Days of a written request by EPA, submit a draft plan to EPA identifying additional measures and/or operational changes to achieve compliance with

the Sand Point Permit's 1.0-acre ZOD limit if the Sand Point Facility is not in compliance with the Sand Point Permit's 1.0-acre ZOD limit after completing the removal project required in Paragraph 12.

25.     The draft compliance plan shall include a proposed time frame for implementing the additional measures and/or operational changes and the basis for relying on such measures to achieve compliance with the Sand Point Permit's 1.0-acre ZOD limit.

26.     Upon EPA's approval of the draft compliance plan, Defendant shall implement the required additional measures and/or operational changes in accordance with the approved time frame.  EPA may require additional seafood waste pile removal, subject to the dispute resolution procedures in Section XIII, should the additional measures and/or operational changes fail to achieve compliance with the Sand Point Permit.

<u>Transfer Water Filtering Project</u>

27.     No later than December 31, 2019, Trident shall install and operate a transfer water filtering system at Sand Point, to reduce and potentially eliminate the production of foam from transfer water used in the fish offloading process and the use of chemical defoamers as a foam control measure.

28.     Trident shall notify EPA in accordance with Paragraph 93 when the transfer water filtering system has been installed and is operational.

29.     After six months of operation, Trident shall submit a report to EPA evaluating the effectiveness of the transfer water filtering system at reducing foam production and the use of chemical defoamers.

12

30.     EPA may require Trident to implement alternative measures, subject to the dispute resolution procedures in Section XIII, to reduce foam and the use of chemical defoamers at Sand Point if, after reviewing the report required in Paragraph 29 EPA determines that the transfer water filtering system has not been shown to be effective.

31.     Trident and EPA acknowledge the experimental nature of the transfer water filtering system at Sand Point.  If, based on unforeseen circumstances, Trident determines that installation and operation of the transfer water filtering system at Sand Point is not feasible, Trident shall submit a report explaining the feasibility issues, including supporting documentation, and a plan identifying alternative measures for reducing foam production and the use of chemical defoamers.  The plan and report required by this Paragraph shall be submitted no later than 30 days after Trident determines that installation and operation of the transfer water filtering system at Sand Point is not feasible, and in no event later than December 31, 2018.

## VII.   INJUNCTIVE RELIEF AT WRANGELL FACILITY
### General Requirements

32.     Defendant shall install and operate source reduction techniques to the extent necessary to ensure that the ZOD associated with the Wrangell Facility is consistently maintained at or below 1.0 acre for as long as the Consent Decree remains in effect.

33.     Defendant shall not conduct mechanical aeration activities that involve use of a dragging device towed over the seafood waste pile or seafloor to dig, turn, or otherwise agitate the substrate in the vicinity of the Wrangell Facility while the Consent Decree remains in effect, unless EPA expressly approves, in writing, such mechanical aeration activities.

13

34.     No later than the date of entry of the Consent Decree, Defendant shall screen all seafood processing waste using a 0.5-millimeter or smaller screen at Outfall 1.  Once screening has been implemented, Trident shall cease the discharge of all seafood processing waste or seafood processing waste residues from Outfall 1, with the exception of stickwater and seafood processing waste/waste residues that have passed through the required screen.  All screened waste shall be disposed of appropriately in accordance with federal, state, and local laws.

Visual Surveys

35.     Starting in 2018 and continuing for as long as the Consent Decree remains in effect, Defendant shall conduct an annual visual survey (e.g., dive survey, drop camera/video survey) of the Wrangell Facility's seafood waste pile no later than 60 Days following conclusion of the salmon processing season, which typically occurs in September.  Starting in 2018 and every second year for as long as the Consent Decree remains in effect, the visual survey shall be accompanied by core samples in accordance with Paragraph 39 below.

36.     Defendant shall, within 120 Days of a written request by EPA, conduct additional visual surveys if the Wrangell Facility is not in compliance with the 1.0-acre ZOD limit contained in the Wrangell Permit.

37.     At least 90 Days before planned commencement of the 2018 visual survey, Trident shall submit to EPA for approval a draft work plan describing the methodology for conducting the annual post-season visual surveys.  If the ZOD is below 0.75 acre after the 2020 visual survey, Trident may submit a request to EPA, including supporting documentation, to amend the work plan to eliminate the coring requirement.

14

38.    Each visual survey shall be consistent with the work plan approved by EPA in accordance with Section IX of the Consent Decree.

39.    At a minimum, each visual survey shall have a scope that extends beyond the ZOD and be accompanied by core samples, consistent with Paragraph 35, at survey points at and outside the visible edge of the ZOD in accordance with the approved work plan.  The visual surveys and core sampling and subsequent report shall include stations containing continuous, discontinuous, and trace amounts of visible seafood waste.  Data quality objectives of the visual surveys include:

      a.    Determining the extent of accumulated seafood waste after each processing season and any trends in seafood waste pile size following implementation of Paragraphs 33 and 34 above; and

      b.    Assessing the impacts of past and ongoing disturbance (i.e., seafood waste and remediation/dragging efforts) on benthic communities and recovery.

40.    Defendant shall submit a draft visual survey report to EPA for review within 60 Days after completing field work for each survey.

VIII.    INDEPENDENT AUDIT OF ENVIRONMENTAL MANAGEMENT SYSTEM

41.    Defendant shall conduct a third-party audit of Trident's existing systems for monitoring and ensuring Clean Water Act compliance, in accordance with the provisions set forth in Appendix B.

## IX.   APPROVAL OF DELIVERABLES

42.   After review of any plan, report, or other item that is required to be submitted pursuant to the Consent Decree, EPA shall, in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

43.   If the submission is approved pursuant to Paragraph 42, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 42(b) or (c), Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section XIII (Dispute Resolution).

44.   If the submission is disapproved in whole or in part pursuant to Paragraph 42(c) or (d), Defendant shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

45.   If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance

16

with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties.

46.     Any stipulated penalties applicable to the original submission, as provided in Section XI, shall accrue during the 45-Day or other specified period set forth in Paragraph 44, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under the Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

## X.     REPORTING REQUIREMENTS

47.     By July 31st and January 31st of each year after the lodging of the Consent Decree, until termination of the Decree pursuant to Section XXI, Defendant shall submit a Semi-Annual Report discussing the status of Defendant's progress in satisfying its obligations under Sections VI, VII, and VIII of the Decree.  Each Semi-Annual Report shall include, at a minimum, a narrative description of activities undertaken; the status of any field work or compliance measures, including the completion of any milestones set forth in any work plan and any problems encountered or anticipated, together with implemented or proposed solutions; the status of any permit applications; and a summary of costs incurred since the previous Semi-Annual Report.

48.     Each Semi-Annual Report shall also include a description of any non-compliance with the requirements of the Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

17

49.     If Defendant violates, or has reason to believe that it may violate, any requirement

of the Consent Decree, Defendant shall notify the United States of such violation and its likely

duration, in writing, within ten business days of the date Defendant first becomes aware of the

violation, and include an explanation of the violation's likely cause and of the remedial steps

taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be

fully explained at the time the report required under this Paragraph is due, Defendant shall so

state in the report.  Defendant shall investigate the cause of the violation and shall then submit an

amendment to the report, including a full explanation of the cause of the violation, within 30

Days of the date Defendant becomes aware of the cause of the violation.  Nothing in this

Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice

required by Section XII (Force Majeure).

50.     Whenever any violation of the Consent Decree or of any applicable permits or

any other event affecting Defendant's performance under the Decree or the performance of its

Facility may pose an immediate threat to the public health or welfare or the environment,

Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible,

but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is

in addition to the requirements set forth in the preceding Paragraph.

51.     All reports shall be submitted according to Section XVII (Notices).

52.     Each report submitted by Defendant under this Section shall be signed by an

official of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my
direction or supervision in accordance with a system designed to assure that qualified personnel
properly gather and evaluate the information submitted.  Based on my inquiry of the person or

persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

53.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

54.     The reporting requirements of the Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

55.     Any information provided pursuant to the Consent Decree may be used by the United States in any proceeding to enforce the provisions of the Consent Decree and as otherwise permitted by law.

## XI.     STIPULATED PENALTIES

56.     Defendant shall be liable for stipulated penalties to the United States for violations of the Consent Decree as specified below, unless excused under Section XII (Force Majeure). A violation includes failing to perform any obligation required by the terms of the Decree, including any work plan under the Decree, according to all applicable requirements of the Decree and within the specified time schedules established by or approved under the Decree.

57.     Late Payment of Civil Penalty.

a.     If Defendant fails to pay the civil penalty required to be paid under Section IV when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

19

58.   Compliance Requirements

a.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraphs 12, 14, 26, 27, and 34:

Penalty Per Violation Per Day                    Period of Noncompliance

$2,500 ................................................1st through 14th Day

$5,000 .............................................. 15th through 30th Day

$10,000 ...............................................31st Day and beyond

b.      The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraphs 13, 15(a)-(c) & (e), 16, 19, 20, 21, 22, 24, 25, 35, 37, and 401:

Penalty Per Violation Per day                     Period of Noncompliance

$500 ...................................................1st through 14th Day

$1,000 .............................................. 15th through 30th Day

$2,000 ................................................31st Day and beyond

59.   Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in Paragraphs 15(d), 23, 29, 40, 47, 48, 49, 50, 51, and 52:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

59.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of the Consent Decree.

60.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

61.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under the Consent Decree.

62.     Stipulated penalties shall continue to accrue, as provided in Paragraph 59, during any Dispute Resolution, but need not be paid until the following:

        a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

        b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as

provided in subparagraph c, below.

        c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

63.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

64.     If Defendant fails to pay stipulated penalties according to the terms of the Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

65.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of the Consent Decree.

66.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' exclusive remedy for violations of the Consent Decree. Subject to the provisions of Section XV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of the Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any

statutory penalty assessed for a violation of the Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to the Consent Decree.

## XII.   FORCE MAJEURE

67.    "Force majeure," for purposes of the Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under the Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" shall include any delay in the performance of any obligation resulting from Defendant's failure to obtain, or a delay in obtaining, any federal or State permit or approval required to fulfill such obligation, so long as Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under the Consent Decree.

68.    If any event occurs or has occurred that may delay the performance of any obligation under the Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to the contacts listed in Paragraph 93, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or

23

to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

69.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under the Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

70.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

71.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XIII, it shall do so no later than 15 Days after receipt of EPA's notice. In any such

proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 67 and 68.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of the Consent Decree identified to EPA and the Court.

## XIII.   DISPUTE RESOLUTION

72.    Unless otherwise expressly provided for in the Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to the Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under the Decree.

73.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under the Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

74.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

75.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

76.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

77.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

78.     <u>Standard of Review</u>

a.      <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in the Consent Decree, in any dispute brought under Paragraph 74 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under the Consent Decree; the adequacy of the performance of work undertaken pursuant to the Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.      <u>Other Disputes</u>. Except as otherwise provided in the Consent Decree, in any other dispute brought under Paragraph 74, Defendant shall bear the burden of demonstrating that its position complies with and better furthers the objectives of the Consent Decree.

79.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under the Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 62.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XI.

## XIV.   INFORMATION COLLECTION AND RETENTION

80.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by the Consent Decree, at all reasonable times, upon presentation of credentials, to:

      a.      monitor the progress of activities required under the Consent Decree;

      b.      verify any data or information submitted to the United States in accordance with the terms of the Consent Decree;

      c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

      d.      obtain documentary evidence, including photographs and similar data; and

      e.      assess Defendant's compliance with the Consent Decree.

81.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

82.     Until five years after the termination of the Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under the Consent Decree.  This information-retention

requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

83.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on grounds of privilege.

84.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

85.     The Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

86.     The Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

87.     The United States reserves all legal and equitable remedies available to enforce the provisions of the Consent Decree.  The Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Sand Point and Wrangell Facilities, whether related to the violations addressed in the Consent Decree or otherwise.

88.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant

case, except with respect to claims that have been specifically resolved pursuant to Paragraph 866.

89.     The Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with the Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of the Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of the Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

90.     The Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to the Consent Decree, nor does it limit the rights of third parties, not party to the Consent Decree, against Defendant, except as otherwise provided by law.

91.     The Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to the Consent Decree.

## XVI.   COSTS

92.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVII.  NOTICES

93.     Notifications, communications, and submissions (collectively, "Submissions") required by the Consent Decree shall be sent to the addressees listed below by electronic, by U.S. Mail, postage pre-paid, or private courier service, except for Submissions under Section XII (Force Majeure) and Section XIII (Dispute Resolution), which shall be sent both electronically and by overnight mail or by certified or registered mail, return receipt requested.  If the date on which a Submission is due falls on a Saturday, Sunday or federal holiday, the deadline for such Submission shall be the next business day.  Where the Consent Decree requires that Submissions be sent to the United States, they shall be sent to the United States Department of Justice and EPA offices designated below.  Where the Consent Decree requires that Submissions be sent to EPA, they need only be sent to the EPA offices designated below.

As to the United States by email:     eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-11200

As to the United States by mail:     EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-11200

As to EPA:                    Christian Gebhardt
                              U.S. Environmental Protection Agency - Region 10
                              1200 Sixth Avenue, Suite 900, OCE-101
                              Seattle, WA 98101
                              Phone: 206-553-0253
                              Gebhardt.chris@epa.gov

As to Defendant:              Shawn Stokes
                              5303 Shilshole Ave NW
                              Seattle WA, 98107
                              Phone: 206-297-6646
                              sstokes@tridentseafoods.com

94.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

95.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in the Consent Decree or by mutual agreement of the Parties in writing.

## XVIII.  EFFECTIVE DATE

96.     The Effective Date of the Consent Decree shall be the date upon which the Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to the Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XIX.   RETENTION OF JURISDICTION

97.    The Court shall retain jurisdiction over this case until termination of the Consent

Decree, for the purpose of resolving disputes arising under the Decree or entering orders

modifying the Decree, pursuant to Sections XIII and XX, or effectuating or enforcing

compliance with the terms of the Decree.

## XX.   MODIFICATION

98.    EPA may, in its sole discretion, make minor modifications to any deliverable,

schedule, deadline, or scope of work in the Consent Decree, including any Appendix, provided

Defendant submits a timely written request demonstrating good cause for the requested minor

modification.  Any minor modification shall be memorialized in writing by EPA promptly.  All

other modifications to the Consent Decree must be agreed to in writing, signed by the Parties,

and approved by the Court.

99.    Any disputes concerning modification of the Decree shall be resolved pursuant to

Section XIII, provided, however, that, instead of the burdens of proof provided by Paragraph 78,

the Party seeking the modification bears the burden of demonstrating that it is entitled to the

requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XXI.   TERMINATION

100.    After Defendant has completed the requirements of Sections V, VI, VII, and VIII,

has thereafter maintained for a period of three years continuous material compliance with the

Consent Decree and Defendant's Sand Point and Wrangell Permits, or any subsequent NPDES

or Alaska Pollutant Discharge Elimination System permit(s) issued by EPA or the Alaska

Department of Environmental Conservation, and has paid the civil penalty and any accrued

stipulated penalties as required by the Consent Decree, Defendant may serve upon the United

States a Request for Termination, stating that Defendant has satisfied those requirements,

together with all necessary supporting documentation.

101.   Following receipt by the United States of Defendant's Request for Termination,

the Parties shall confer informally concerning the Request and any disagreement that the Parties

may have as to whether Defendant has satisfactorily complied with the requirements for

termination of the Consent Decree set forth in Paragraph 100 above.  If the United States agrees

that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint

stipulation terminating the Decree.

102.   If the United States does not agree that the Decree may be terminated, Defendant

may invoke Dispute Resolution under Section XIII.  However, Defendant shall not seek Dispute

Resolution of any dispute regarding termination until 60 Days after service of its Request for

Termination.

## XXII.  PUBLIC PARTICIPATION

103.   The Consent Decree shall be lodged with the Court for a period of not less than 30

Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

improper, or inadequate.  Defendant consents to entry of the Consent Decree without further

notice and agrees not to withdraw from or oppose entry of the Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXIII. SIGNATORIES/SERVICE

104.    Each undersigned representative of Defendant and the United States certifies that he or she is fully authorized to enter into the terms and conditions of the Consent Decree and to execute and legally bind the Party he or she represents to this document.

105.    The Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to the Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIV. INTEGRATION

106.    The Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in the Consent Decree.

## XXV. FINAL JUDGMENT

107. Upon approval and entry of the Consent Decree by the Court, the Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this __8th___ day of __May__, 2018.

The Honorable Marsha J. Pechman
United States Senior District Court Judge

FOR THE UNITED STATES OF AMERICA:


NATHANIEL DOUGLAS
Deputy Chief
Environmental Enforcement Sections
Environment and Natural Resources Division
U.S. Department of Justice

1-23-18
Date

FREDERICK S. PHILLIPS
Senior Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611
202.305.0439


ANNETTE L. HAYES
United States Attorney
Western District of Washington


BRIAN KIPNIS
Assistant United States Attorney
Western District of Washington

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


_____
Date

_____
ALLYN STERN
Regional Counsel
U.S. Environmental Protection Agency, Region 10


_____
Date

_____
KIMBERLY A. OWENS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Office of Regional Counsel


FOR TRIDENT SEAFOODS CORPORATION:


_____
Date

_____
JOSEPH T. PLESHA
General Counsel
Trident Seafoods Corporation
5303 Shilshole Avenue NW
Seattle, WA 98107-4000


39

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

Jan 26, 2018
**Date**

ALLYN STERN
Regional Counsel
U.S. Environmental Protection Agency, Region 10

Jan. 26, 2018
**Date**

KIMBERLY A. OWENS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Office of Regional Counsel

FOR TRIDENT SEAFOODS CORPORATION:

**Date**

JOSEPH T. PLESHA
General Counsel
Trident Seafoods Corporation
5303 Shilshole Avenue NW
Seattle, WA 98107-4000

42

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:


_____

ALLYN STERN
Regional Counsel
U.S. Environmental Protection Agency, Region 10


_____

KIMBERLY A. OWENS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
Office of Regional Counsel


FOR TRIDENT SEAFOODS CORPORATION:

1/22/18
Date

_____

JOSEPH T. PLESHA
Chief Legal Officer
Trident Seafoods Corporation
5303 Shilshole Avenue NW
Seattle, WA 98107-4000

39

# APPENDIX A





**Seafood Waste Thickness**
**Estimated from Video Probe (ft)**

- ☐ 0
- ☐ 0.01 - 1.00
- ☐ 1.01 - 2.00
- ▨ 2.01 - 3.00
- ▩ 3.01 - 4.00
- ■ 4.01 - 5.00
- • Seafood waste throughout penetration

- ☐ 2016 Video Probe Station
- • 2014 SPI Station
- ⬡ 2014 SPI ZOI (0.8 acres)
- ⬡ Revised 2017 Seafood Waste Presence Boundary based on 2016 data (3.47 acres)
- ⬡ EPA 2016 Requested Removal Area (3.05 acres)

**Sand Point,**
**Popof Island**

INSPIRE ENVIRONMENTAL

Name: SP_16C1_VideoProbe_SFW_thick_2014_SPI_IFW

2014 SPI Station ID is labeled next to sampling location

Coordinate System: NAD 1983 UTM Zone 4N   Projection: Transverse Mercator

Bathymetry: 2016 Multibeam, 2x vertical exaggeration

0    50 Meters

N

Date: 5/12/2017

## APPENDIX B

## AUDIT OF ENVIRONMENTAL MANAGEMENT SYSTEM

1.      Trident shall retain, at its expense, a third-party Auditor to conduct a comprehensive audit of Trident's existing overall management system for monitoring and ensuring compliance with the Clean Water Act on a company-wide basis.  The overall objective of the audit is to support Trident's ongoing efforts to design, develop and implement a comprehensive, robust and effective environmental management system (EMS) across all Trident facilities.

2.      Within 60 Days of entry of the Consent Decree, Trident shall submit to EPA the name and qualifications of a proposed Auditor that Trident certifies meets the following conditions:

      a.      The Auditor has demonstrated the requisite expertise and experience in designing, evaluating, and maintaining complex, multi-facility systems—preferably in the seafood processing industry—for monitoring and managing compliance with the Clean Water Act.

      b.      The Auditor and its personnel have not conducted research, development, design, construction, financial, engineering, legal, consulting, nor any other advisory services for Trident within the last three years and were not involved in development or operation of Trident's current environmental management software (Enviance) or other systems.

      c.      The Auditor and its personnel will not provide any other commercial, business, or voluntary services to Trident for at least three years following submittal of the final EMS Audit Report.

      d.      Trident will not provide future employment to any of the Auditor's personnel who managed, conducted, or otherwise participated in the third-party EMS audit for at least three years following submittal of the final EMS Audit Report.

3.      EPA will notify the Trident in writing within 30 Days of receipt of Trident's submission under Paragraph 2 of this Appendix whether it approves of the proposed Auditor.  If EPA rejects a proposed Auditor, within 20 Days of receipt of EPA's notification Trident shall submit to EPA another proposed Auditor that meets the conditions set forth above.

4.      Within 30 Days of EPA approval of a proposed Auditor, Trident shall retain such Auditor to perform an audit that meets the objectives set forth below.  Trident shall ensure that all audit personnel who conduct or otherwise participate in audit activities have certified that they satisfy the conditions set forth above before receiving any payment from Trident.

5.      Within 60 Days of being retained, the Auditor shall initiate an audit of Trident's existing systems for monitoring and ensuring environmental compliance that meets the following objectives:

      a.      evaluate whether the content managed by Trident's current software system (Enviance) and other systems currently in use are adequate to ensure and maintain compliance with the Clean Water Act across all of Trident's facilities;

      b.      describe Trident's existing facility processes, internal controls (management and engineering), business and management organizational structure, and responsibilities with respect to applicable environmental laws;

      c.      identify current and past environmental management practices that may affect Trident's understanding of potential shortcomings in existing system(s) and correct

those practices that impede Trident's ability to achieve consistent and comprehensive environmental compliance across all facilities;

        d.      provide recommendations on establishing or improving systems to identify and respond to changes in environmental requirements and Trident's obligations under the Clean Water Act.

      6.      Trident shall ensure that the Auditor concurrently submits an Audit Report to EPA and Trident within 60 Days of completing the audit. In addition, Trident shall ensure that the Auditor concurrently shares any draft or preliminary findings or reports with EPA and that such findings or reports include summaries of relevant oral communications between the Auditor and Trident. Upon EPA's request, Trident shall also ensure that the Auditor provides copies of all documents reviewed and identifies all personnel who were interviewed in connection with the Audit Report. The Audit Report shall include all of the Auditor's findings, conclusions, and other observations.

      7.      Trident shall ensure that the Auditor includes in any draft or final Audit Report a certification that the Auditor has remained in compliance with all of the conditions set forth in Paragraph 2 above, and will continue to follow such conditions until three years after the final Audit Report is submitted to EPA.

      8.      Within 60 Days of receiving the Audit Report, Trident shall submit to EPA a draft EMS Action Plan that responds to all findings, conclusions, and observations set forth in the Audit Report. Trident shall also describe each completed or proposed action to correct each deficiency identified in the Audit Report, including the date(s) that such actions occurred or are scheduled to occur. Trident shall also identify any areas of disagreement with the Audit Report

and provide the basis for that disagreement along with alternative recommendations for correcting identified deficiencies.

9.     EPA shall review and approve the draft EMS Action Plan in accordance with Section IX (Approval of Deliverables) of the Consent Decree.

10.    Trident shall complete the actions required in the approved EMS Action Plan according to the schedule submitted and approved with that plan, and report to EPA on such completion in accordance with Section X of the Consent Decree.